UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:26-CV-00069-GNS

DANA EMMITT STEADMAN PLAINTIFF

v.

KENTUCKY STATE POLICE et al. DEFENDANTS

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 6, 7, 8, 10, 11), Plaintiff's Motion for Leave to Supplement the Record with Exhibits (DN 15), and Plaintiff's Motion for Extension of Time (DN 16). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS AND CLAIMS

This *pro se* civil rights action arises out of the alleged seizure by law enforcement of 350 pounds of hemp from the farm of Plaintiff Dana Emmitt Steadman ("Steadman") on June 11, 2020. (Am. Compl. 7, DN 4). Steadman alleges that her crop of hemp had been tested and confirmed to be "within legal THC limits." (Am. Compl. 7).[1] Nevertheless, she alleges that "[o]n June 11, 2020, officers with the Kentucky State Police, along with Barren County Sheriff's deputies and representatives of the Kentucky Department of Agriculture, executed a warrant at [Steadman's] farm in Park City, Kentucky[,] and seized approximately 350 pounds of [her] legally grown hemp." (Am. Compl. 7). These parties "treated [Steadman's] hemp as illegal marijuana and confiscated

[1] As stated by the U.S. Department of Agriculture: "While hemp and . . . marijuana come from the same genus plant and contain many of the same chemical compounds . . . . [t]he legal difference is the amount of Tetrahydrocannabinol (THC) the plant contains." *Frequently Asked Questions*, U.S. Dep't of Agric., https://www.ams.usda.gov/rules-regulations/hemp/frequently-asked-questions-faq [https://perma.cc/V7TF-XKAE] (last accessed Nov. 4, 2026). "If the cannabis plant contains more than 0.3% THC it is considered marijuana." *Id.* In contrast, the hemp plant has "no more than a 0.3 percent concentration of THC." *Id.*

it." (Am. Compl. 7). Specifically, "[Kentucky State Police] Detective Robert Walker participated in obtaining and executing the warrant. The Kentucky State Police and Barren County Sheriff's Office carried out the seizure. The Kentucky Department of Agriculture had prior knowledge of Plaintiff's lawful hemp operation and testing but failed to prevent or correct the unlawful seizure . . . ." (Am. Compl. 7). Later, Steadman "notified state officials, including the Office of the [Kentucky] Attorney General, but no corrective action was taken." (Am. Compl. 7).[2]

Steadman filed suit on April 23, 2026, against Defendant Kentucky State Police ("KSP"), Defendant KSP Detective Robert Walker ("Walker"), Defendant Barren County Sheriff's Office ("BCSO"), Defendant Kentucky Department of Agriculture ("KDA"), and current and former KDA personnel—Defendant Ryan Quarles ("Quarles"), Defendant Jonathan Shell ("Shell"), and Defendant Doris Hamliton ("Hamilton"). (Compl. 1, DN 1). On April 30, 2026, Steadman filed an Amended Complaint adding Defendant Kentucky Attorney General Russell Coleman ("Attorney General"). (Am. Compl. 1). The Amended Complaint seeks both monetary damages, and injunctive relief "preventing further unlawful targeting and ensuring equal treatment under the law." (Am. Compl. 12).

Between May 21, 2026, and June 4, 2026, all Defendants moved to dismiss all claims against them.[3] On July 15, 2026, after the deadlines to respond to these motions had passed,

---

[2] Steadman also alleges that a "newspaper article falsely stated [her] business was shut down[,]" and that in August 2025, state court judge John Alexander ordered a "pause of her business pending inspection by the Cabinet for Health and Family Services ["CHFS"]. [Steadman] complied, but no inspection occurred for approximately two months." (Am. Compl. 7, 11). Neither the newspaper, Judge Alexander, nor the CHFS are parties to this action.

[3] (Def.'s Mem. Supp. Mot. Dismiss 1, DN 6-1 [hereinafter BCSO's Mot. Dismiss]; Defs.' Mem. Supp. Mot. Dismiss 1, DN 7-1 [hereinafter KDA Defs.' Mot. Dismiss] (jointly on behalf of the KDA and its current and former personnel, Quarles, Shell, and Hamilton (collectively, "KDA Defendants")); Def.'s Mem. Supp. Mot. Dismiss 1, DN 8-1 [hereinafter Walker's Mot. Dismiss]; Def.'s Mot. Dismiss 1, DN 10 [hereinafter AG's Mot. Dismiss]; Def.'s Mot. Dismiss 1, DN 11 [hereinafter KSP's Mot. Dismiss]).

Steadman filed responses to each.[4] On the same day, she also filed two motions of her own: one for leave to supplement the record with exhibits, and one for extension of time. (Pl.'s Mot. Leave Suppl. 1, DN 15; Pl.'s Mot. Extension Time 1, DN 16). All Defendants replied in support of their motions to dismiss, all but the KDA Defendants opposed leave to supplement the record, and the Attorney General, Walker, and the BCSO also opposed extension of time.[5] Steadman did not reply to any of Defendants' responses, and the time to do so has passed. *See* LR 7.1(c) ("A party may file a reply within 14 days of service of the response."). Accordingly, the motions are ripe for adjudication.

## II. DISCUSSION

### A. Motion for Extension of Time (DN 16)

Along with her responses to the motions to dismiss, Steadman moved for "an extension of time to file additional materials in support of her opposition to Defendants' Motion to Dismiss and to evaluate whether further amendment of the pleadings may be necessary." (Pl.'s Mot. Extension Time 1). The Court construes this motion under Fed. R. Civ. P. 6(b)(1)(B), which states: "When an act may or must be done within a specified time, the court may, for good cause, extend the time

---

[4] (Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 12 [hereinafter Pl.'s Resp. KSP's Mot. Dismiss]; Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 13 [hereinafter Pl.'s Resp. BCSO's Mot. Dismiss]; Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 14 [hereinafter Pl.'s Resp. AG's Mot. Dismiss]; Pl.'s Resp. Defs.' Mot. Dismiss 1, DN 17 [hereinafter Pl.'s Resp. KDA Defs.' Mot. Dismiss]; Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 18 [hereinafter Pl.'s Resp. Walker's Mot. Dismiss]); *see also* Local Rule 7.1(c), https://www.kywd.uscourts.gov/sites/kywd/files/local_rules/KY_Amended_Civil_Rules_August_2026-1.pdf ("[A] party opposing a motion must file a response within 21 days of service of the motion. Failure to timely respond to a motion may be grounds for granting the motion.").

[5] (Def.'s Resp. Mot. Extension Time & Resp. Pl.'s Mot. Leave Suppl. 1, DN 20 [hereinafter AG's Combined Resp.]; Def.'s Combined Resp. Pl.'s Mot. Extension Time & Resp. Pl.'s Mot. Leave Suppl. 1, DN 21 [hereinafter BCSO's Combined Resp.]; Def.'s Reply Mot. Dismiss 1, DN 22; Def.'s Resp. Pl.'s Mot. Leave Suppl. 1, DN 23 [hereinafter KSP's Resp. Mot. Leave Suppl.]; Def.'s Reply Mot. Dismiss 1, DN 24; Def.'s Combined Reply Mot. Dismiss & Resp. Pl.'s Mot. Extension Time Resp. Mot. Leave Suppl. 1, DN 25 [hereinafter Walker's Combined Reply & Resp.]; Def.'s Reply Mot. Dismiss 1, DN 26; Defs.' Reply Mot. Dismiss 1, DN 27).

. . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The motion is treated in three parts: (i) as regards excusing the late filing of Steadman's *existing* responses; (ii) as regards time to file *additional* material opposing Defendants' motions; and (iii) as regards time to further *amend* the pleadings. The motion will granted as to the first, and denied as to the second and third.

**1. *Untimely-Filed Responses***

First, Steadman's responses and motions were filed after the deadline for responding to Defendants' motions. *See* Local Rule 7.1(c). Only Walker, however, opposes extension of time to the narrow extent of excusing Steadman's late filing of her *existing* responses to the motions to dismiss, rather than permitting additional further filings. (Walker's Combined Reply & Resp. 7-8).[6] Generally, where a plaintiff "request[s] an extension of the response deadline after the deadline had passed, the district court [can] grant the extension only if her failure to act resulted from excusable neglect." *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266 (6th Cir. 2009) (citing Fed. R. Civ. P. 6(b)(1)(B)) (affirming district court's decision to strike a plaintiff's untimely response to the defendant's summary judgment motion). The determination of excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission[,]" and the determination is in the discretion of the court. *Id.* (citations omitted).

*Pro se* plaintiffs are afforded some leniency "when dealing with sophisticated legal issues, acknowledging their lack of formal training," although the same does not apply to "straightforward

---

[6] The Attorney General and the BCSO explicitly do not oppose the extension of time to this narrow extent. (AG's Combined Resp. 2 n.1; BCSO's Combined Resp. 1 ("join[ing], adopt[ing], and reincorporat[ing]" the Attorney General's position on extension of time)). The KSP and the KDA Defendants did not respond to the motion for extension of time.

procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (affirming dismissal of complaint where the *pro se* plaintiff "failed to adhere to readily comprehended court deadlines of which he was well-aware[,]" after the court had granted extensions which the plaintiff did not utilize). Walker argues against leniency here, but cites only cases in which *pro se* plaintiffs failed to comply with deadlines set out in court orders, rather than deadlines imposed solely by reference to the Local Rules. (Walker's Combined Reply & Resp. 7-8 (first citing Mem. Op. & Order at 3, DN 28, *Sandefur v. Ohio Cnty. Sheriff's Off.*, 4:24-CV-00077-BJB-HBB (W.D. Ky. Jan. 7, 2026), then citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and then citing *Jourdan*, 951 F.2d at 109). As set forth below, even considering the arguments raised in Steadman's untimely-filed responses, all her claims will be dismissed. Out of an abundance of flexibility for a *pro se* plaintiff, the motion for extension of time will be granted to the narrow extent of excusing the late filing of Steadman's existing responses to the several motions to dismiss (DN 12, 13, 14, 17, 18), and permitting consideration of her arguments made therein.

**2. *Time to File Additional Materials***

Second, Steadman's motion seeks more time to "file additional materials in support of her opposition to Defendants' Motion[s] to Dismiss." (Pl.'s Mot. Extension Time 1). Specifically, her submissions make clear that she wishes to file documentary evidence and exhibits in support of the *truth* of her factual allegations. (Pl.'s Mot. Extension Time 1; Pl.'s Mot. Leave Suppl. 1). This request misunderstands the nature of the Defendants' motions, which challenge the legal sufficiency of Steadman's factual allegations, not their truth. Documentary evidence is unnecessary at this stage because, on the pending motions, Steadman's factual allegations will already be presumed true and construed in the light most favorable to her. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (for a motion to dismiss for failure to state

a claim); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (same for a facial attack on subject matter jurisdiction). "Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). Accordingly, submission of "records, photographs, licensing documents, testing records, correspondence, and other exhibits" is not necessary to decide on the pending motions. (Pl.'s Mot. Extension Time 1). The motion for extension of time will be denied as to giving time to file such materials.

### 3. *Time to Consider Amendment*

Third, Steadman seeks 30 days to "evaluate whether further amendment of the pleadings may be necessary." (Pl.'s Mot. Extension Time 1). Specifically, she "seeks sufficient time to review the arguments raised by Defendants and determine whether a further amendment of the pleadings would assist in clarifying the claims before the Court." (Pl.'s Mot. Extension Time 1).[7]

---

[7] Steadman's first Amended Complaint was filed on April 30, 2026, and remains the operative pleading at this time. (Am. Compl. 1). Steadman, however, represents multiple times in her submissions that a request to file a Second Amended Complaint was *already* previously submitted. (Pl.'s Resp. AG's Mot. Dismiss 2 ("Plaintiff . . . has already sought leave to file a Second Amended Complaint."); Pl.'s Resp. Det. Walker's Mot. Dismiss 4 ("Plaintiff has already moved for leave to file a Second Amended Complaint . . . .")). In an additional document she filed, labelled "Master Chronology," Steadman specifically states that such a motion was filed on June 10, 2026. (Pl.'s Notice Filing 27, DN 19 ("June 10, 2026 – Motion for leave to file Second Amended Complaint . . . Plaintiff filed one motion seeking leave to file a Second Amended Complaint, including proposed claims or parties relating to CHFS and the Office of Medical Cannabis.")). The "Master Chronology" is mentioned here only to clarify for Steadman that no such motion was filed in the record of this case, on that date or otherwise. As will be discussed below, the "Master Chronology" is not otherwise considered in ruling on the pending motions. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("If plaintiffs believe that they need to supplement their complaint with additional facts . . . they have a readily available tool: a motion to amend the complaint under [Fed. R. Civ. P.] 15. Plaintiffs cannot, by contrast, amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." (internal citations omitted) (citations omitted)).

Asking for time to amend is not the same as a motion for leave to amend, nor does Steadman include an attached copy of the proposed amendments for the Court to consider. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.' . . . Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint . . . ." (first alteration in original)). Moreover, amendment would be futile to the extent that claims are dismissed due to issues that could not be cured by amendment, including Eleventh Amendment sovereign immunity and the statute of limitations. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." (citation omitted)); *Wershe v. City of Detroit*, 112 F.4th 357, 372 (6th Cir. 2024) (affirming dismissal without leave to amend where the "claims clearly fall far outside of the applicable statutes of limitations, and any amendments to cure the statute of limitations deficiencies would plainly be futile."); *Ky. Mist Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 791 (E.D. Ky. 2016) (finding that proposed amendment would be futile where it "do[es] not (and cannot) resolve the Eleventh Amendment and sovereign immunity questions").

The request for additional time is therefore denied to the extent it seeks to put off a ruling on the Defendants' pending motions to dismiss. Steadman's delay in filing her existing responses is already being excused, and the motions to dismiss are fully briefed and ripe for adjudication.

### B. Motion for Leave to Supplement the Record with Exhibits (DN 15)

Steadman also filed a motion seeking "leave to supplement the record with exhibits supporting the factual allegations contained in the Amended Complaint and responses to

Defendants' motions to dismiss." (Pl.'s Mot. Leave Suppl. 1).[8] She argues that her "proposed exhibits will assist the Court in understanding the factual background of the case and the basis for Plaintiff's claims." (Pl.'s Mot. Leave Suppl. 1).

The Court construes this motion as either seeking to have the described exhibits considered in its ruling on the pending motions to dismiss, or else as seeking to have those motions to dismiss converted into motions for summary judgment. *See Johnson v. Mackie*, No. 15-14233, 2016 WL 3924113, at *1 (E.D. Mich. July 21, 2016) (construing a "motion to attach exhibits" as seeking to have those exhibits considered while the court ruled on a pending motion); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters *outside the pleadings* are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." (emphasis added)). Under either construction, the motion will be denied.

As discussed above regarding extension of time, documentary *evidence* of the factual allegations in the Amended Complaint is unnecessary at this stage, because her factual allegations will already be presumed true on the pending motions. *Hill*, 409 F.3d at 716; *Ritchie*, 15 F.3d at

---

[8] Specifically, Steadman asserts that she possessed exhibits, including but not limited to:

> a. Certificates of Analysis (COAs) demonstrating THC compliance of Plaintiff's hemp;
> b. Kentucky Department of Agriculture licensing records and related correspondence;
> c. Video recordings and photographic evidence relating to the June 11, 2020[,] seizure;
> d. Newspaper articles and media reports concerning Plaintiff's business and the seizure;
> e. Correspondence with state and local officials;
> f. Regulatory records and agency communications;
> g. Business records demonstrating damages and economic losses; and
> h. Additional documents supporting Plaintiff's factual allegations and claims for relief.

(Pl.'s Mot. Leave Suppl. 1).

598. As the Sixth Circuit has explained, "it is black-letter law that, with a few irrelevant exceptions, a court evaluating" a motion to dismiss "must focus only on the allegations in the pleadings." *Bates*, 958 F.3d at 483 (citations omitted). "This rule applies just as much when the plaintiff attaches evidence to its opposition as when (as is more common) the defendant attaches evidence to its motion." *Id.* (citations omitted).

Matters—or evidence—outside the pleadings can generally be considered only if the court converts the motion into one for summary judgment under Fed. R. Civ. P. 56. *Bates*, 958 F.3d at 483-84. "[A] district court," however, "'has the discretion to ignore' any extra-pleading materials that are presented as part of a [Fed. R. Civ. P.] 12(b)(6) motion and instead 'resolve the motion solely on the basis of the pleadings.'" *Taylor v. Neff*, No. 3:21-CV-84-DJH-CHL, 2021 WL 5988929, at *2 (W.D. Ky. Dec. 17, 2021) (quoting *Seum v. Osborne*, 348 F. Supp. 3d 616, 630 (E.D. Ky. 2018)); *Wysocki*, 607 F.3d at 1104 (decision whether or not to convert motion to dismiss into motion for summary judgment is reviewed for abuse of discretion); *see also* Fed. R. Civ. P. 12(d) (requiring conversion only when "matters outside the pleadings are presented to *and not excluded by* the court" (emphasis added)).

As the KSP correctly argues, "none of the records [Steadman] wishes to submit to supplement her claims would change any fact material to the Court's decision to dismiss her [Amended] Complaint." (KSP's Resp. Mot. Leave Suppl. 2). The motion for leave to supplement with exhibits will therefore be denied, the exhibits will be excluded, and the motions to dismiss will not be converted into motions for summary judgment.

**C. <u>Motions to Dismiss (DN 6, 7, 8, 10, 11)</u>**

All Defendants have moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6). Except for the BCSO, all Defendants also seek dismissal at least partly based on Eleventh

Amendment sovereign immunity, under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6).[9] As set forth below, all claims against the KSP and the KDA are barred by Eleventh Amendment sovereign immunity. Claims for money damages and injunctive relief against KSP Detective Walker, former KDA Commissioner Quarles, current KDA Commissioner Shell, KDA employee Hamilton, and Kentucky Attorney General Coleman (collectively, the "Individual Defendants"), to the extent they are sued in their *official* capacities, will be dismissed on the same basis.[10] The Court has jurisdiction over the claims for money damages against the Individual Defendants, to the extent they are sued in their individual capacities, and over the claims against the BCSO. Nevertheless, these remaining claims are all either time-barred by the statute of limitations, or fail to state a plausible claim under Fed. R. Civ. P. 12(b)(6).[11]

---

[9] The KDA Defendants, Det. Walker, and the Attorney General each argue Eleventh Amendment sovereign immunity while referencing only Fed. R. Civ. P. 12(b)(6), whereas the KSP cites both 12(b)(1) and (6) as grounds for dismissal on this basis. (KDA Defs.' Mot. Dismiss 1, 6-7; Det. Walker's Mot. Dismiss 3, 5-7; AG's Mot. Dismiss 1, 3-4; KSP's Mot. Dismiss 1, 3-4). Whether framed as a Fed. R. Civ. P. 12(b)(1) challenge to subject matter jurisdiction or otherwise, the Eleventh Amendment is "a true jurisdictional bar that . . . once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

[10] Steadman does not specify in which capacity—individual or official—she sues each Individual Defendant. Construing the Amended Complaint liberally in favor of a *pro se* plaintiff, both capacities are considered.

[11] In the alternative, each of Steadman's responses seeks leave to amend. (Pl.'s Resp. KSP's Mot. Dismiss 3; Pl.'s Resp. BCSO's Mot. Dismiss 2-3; Pl.'s Resp. AG's Mot. Dismiss 2; Pl.'s Resp. KDA Defs.' Mot. Dismiss 3; Pl.'s Resp. Det. Walker's Mot. Dismiss 4). These requests are denied because they do not include an attached copy of the proposed amendments. *Kuyat*, 747 F.3d at 444. They are also denied as futile, to the extent that claims are dismissed due to incurable Eleventh Amendment sovereign immunity and statute of limitations defects. *Wershe*, 112 F.4th at 357; *Ky. Mist Moonshine, Inc.*, 192 F. Supp. 3d at 791.

**1. *Standards of Review***

**a. Fed. R. Civ. P. 12(b)(1)**

Threshold challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). A challenge to subject-matter jurisdiction can take two forms: a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). When reviewing a facial attack, the factual allegations in the complaint are taken as true. *Id.*

Eleventh Amendment sovereign immunity can serve as a basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 943-44 (E.D. Mich. 2025). "'[W]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power,' [however,] the defense 'is not coextensive with the limitations on judicial power in Article III.'" *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998)). Accordingly, "[w]hile the party invoking jurisdiction has the burden of establishing jurisdiction, a defendant invoking sovereign immunity has the burden to show it applies." *Doe v. Sup. Ct. of Ky.*, 482 F. Supp. 3d 571, 581 (W.D. Ky. 2020) (citing *Nair*, 443 F.3d at 474).

All Defendants raising Eleventh Amendment sovereign immunity arguments in this case make *facial* attacks—assuming the truth of Steadman's factual allegations for purposes of their motions. (KDA Defs.' Mot. Dismiss 2; Walker's Mot. Dismiss 3; AG's Mot. Dismiss 3; KSP's

Mot. Dismiss 2); *see Satkowiak*, 771 F. Supp. 3d at 944 (finding that the defendants' motion to dismiss made a facial attack where it "argue[d] that, even assuming all facts within [the] Complaint are true, . . . [the] claims are barred by Eleventh Amendment sovereign immunity.").

**b. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill*, 409 F.3d at 716 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555).

"[A] motion under [Fed. R. Civ. P.] 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Dismissal based on the statute of limitations can be appropriate, however, when "the allegations in the complaint *affirmatively show* that the claim is time-barred." *Wershe*, 112 F.4th at 364-65 (emphasis added) (citation omitted); *Cataldo*, 676 F.3d at 547. A defendant claiming the statute of limitations as a

defense has the burden to show that it has run. *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (citing *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

"[*P*]*ro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys." *McCormack v. Cnty. of Calhoun Inc. Form*, No. 23-1123, 2023 WL 5608806, at *1 (6th Cir. June 16, 2023) (alteration in original) (quoting *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012)). This "lenient treatment," however, "has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) (citation omitted); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citation omitted) (recognizing lenient treatment of *pro se* plaintiffs, but noting that "trial and appellate courts should not have to guess at the nature of the claim asserted"). "[T]he less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations[,]" or to create a claim for a plaintiff. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (citation omitted); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (citation omitted) (noting that to require otherwise would compel a court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party").

**c. Matters "Outside the Pleadings"**

In addition to her response briefs and motions, Steadman has also filed a separate document, labelled a "Master Chronology" (DN 19), which is not a part of the pleadings, and cannot be considered under either the facial attack under Fed. R. Civ. P. 12(b)(1) or the challenges under Fed. R. Civ. P. 12(b)(6). "Assessment of the facial sufficiency of the complaint must

ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt*, 835 F.3d at 640 (citing *Wysocki*, 607 F.3d at 1104); *see also Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *Ritchie*, 15 F.3d at 598) (a facial attack under Fed. R. Civ. P. 12(b)(1) also looks only to "the sufficiency of the pleading itself"). Thus, "[i]f a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Bates*, 958 F.3d at 484 (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)).

### 2. *Eleventh Amendment Sovereign Immunity*

The Eleventh Amendment generally "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments" in federal court. *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993)); U.S. Const. amend. XI. The resulting immunity extends to suits, regardless of the relief sought, against the state itself, a state agency, or state officials acting in their official capacity, with certain exceptions. *Harmon v. Goodwin*, No. 3:24-CV-47-GNS, 2025 WL 450407, at *2 (W.D. Ky. Feb. 10, 2025); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Such immunity "does not apply if the agency is a 'political subdivision,' like a county or municipality, but does apply if the agency is an 'arm of the state.'" *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 442 (6th Cir. 2006) (citing *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005)).

In *Ernst v. Rising*, the Sixth Circuit outlined the framework for determining if an agency is entitled to sovereign immunity under the Eleventh Amendment:

> In deciding whether an entity is an "arm of the State" on the one hand or a "political subdivision" on the other—the principal issue that occupies us today—the Supreme Court has considered several factors: (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes, and state courts, refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government. In discussing these factors, the Court has emphasized that the first factor—the liability of the State for a judgment—is the foremost factor, and that it is the state treasury's potential legal liability for the judgment, not whether the state treasury will pay for the judgment in that case, that controls the inquiry . . . .

*Ernst*, 427 F.3d at 359 (internal citations omitted); *accord Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 681-82 (6th Cir. 2018). An official-capacity suit against an officer of such an agency is a suit against the agency itself, and therefore against the state. *Graham*, 473 U.S. at 165-66.

There are three exceptions to Eleventh Amendment immunity: "(a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young* . . . applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (first citing *Ex parte Young*, 209 U.S. 123 (1908), and then citing *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000)). The first and third exceptions are not applicable here. *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004) (noting that Kentucky has not waived its immunity to Section 1983 claims); *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (noting that Congress's enactment of Section 1983 did "not abrogate Eleventh Amendment immunity." (citation omitted)). The *Ex parte Young* exception, which can apply to claims for prospective injunctive relief against individual government officers, will be addressed separately. *Cooper*, 527 F.3d at 507.

**a. The Kentucky Attorney General**

This Court has repeatedly recognized that the Kentucky Attorney General is entitled to Eleventh Amendment immunity from suit in his official capacity because a suit against such a state official in his or her official capacity is a suit against the state. *See, e.g.*, *Moore v. Coleman*, No. 5:26-CV-1-JHM, 2026 WL 1991637, at *2 (W.D. Ky. July 9, 2026) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *Stone v. Good Old Boys Domestic Terrorists' Org.*, No. 5:23-CV-P139-JHM, 2025 WL 1262061, at *4 (W.D. Ky. May 1, 2025).

Additionally, as the Attorney General notes, the *Ex parte Young* exception does not apply to him in this case because the injunctive relief Steadman seeks is not against him. (AG's Mot. Dismiss 4 n.3). The injunctive relief sought is "orders to prevent further unlawful *actions against* [Steadman's] business" and "relief preventing further *unlawful targeting* and ensuring *equal treatment* under the law." (Am. Compl. 8, 12) (emphasis added). Neither of these forms of relief are plausibly directed to the Attorney General, who is not alleged to have targeted Steadman, taken any actions against her business, or treated her unequally in comparison with others. Whereas all other Defendants are alleged to have been involved in the seizure of Steadman's hemp, the only allegation against the Attorney General is that, at some time *after* the seizure, Steadman notified his office, "but no corrective action was taken." (Am. Compl. 7). Steadman's response to the Attorney General's motion to dismiss also addresses neither the immunity issue nor the injunctive relief issue. (Pl.'s Resp. AG's Mot. Dismiss). Accordingly, claims against the Attorney General in his official capacity, as well as claims for injunctive relief, will be dismissed.

**b. The KSP and Walker**

This Court has also recognized that "[i]t is well-established that the Kentucky State Police constitutes an 'arm of the state' for Eleventh Amendment purposes." *Tucker v. Ky. State Police*

*Post #4*, No. 3:23-CV-P328-JHM, 2023 WL 6929815, at *2 (W.D. Ky. Oct. 19, 2023) (citation omitted); *accord Kenney v. Paris Police Dep't*, No. 5:07-CV-358-JMH, 2011 WL 1582125, at *4-*5 (E.D. Ky. Apr. 26, 2011); *Barnes v. Hamilton*, 946 F.2d 894, 1991 WL 203113, at *2 (6th Cir. 1991). The same immunity extends to official-capacity claims against Walker, as an officer of the KSP, unless the *Ex parte Young* exception applies. *Graham*, 473 U.S. at 169. Steadman's response to the KSP's motion again does not address the argument that the KSP is immune from suit. (Pl.'s Resp. KSP's Mot. Dismiss). Her response to Walker appears to concede that he is immune from suit in his official capacity, arguing only that immunity does not extend to claims made against him in his individual capacity. (Pl.'s Resp. Walker's Mot. Dismiss 3). Accordingly, all claims against the KSP, and claims against Walker for money damages in his official capacity, will be dismissed.

**c. The KDA, Quarles, Shell, & Hamilton**

The KDA Defendants argue that the KDA, too, is an "arm of the state" for Eleventh Amendment purposes. (KDA Defs.' Mot. Dismiss 6-7). While they do not identify prior rulings expressly finding the KDA specifically to be an arm-of-the-state entitled to Eleventh Amendment immunity, the Sixth Circuit's *Ernst* factors clearly indicate that it is.[12] The KDA is therefore

[12] First, Kentucky's treasury would presumably be responsible for any judgment against the KDA in this matter. *See Lanier v. Ky. Comm'n on Hum. Rts.*, No. 3:06-CV-602-S, 2007 WL 2407274, at *4 (W.D. Ky. Aug. 20, 2007) ("[B]alancing of these [*Ernst*] factors reveals that the Commission [on Human Rights] is an executive branch state agency, an 'arm' or 'alter ego' of Kentucky . . . . Kentucky's treasury would be responsible for any judgment against the Commission. The court knows of no other source from which a judgment in favor of [the plaintiff] could be paid."); *cf.* KRS 45A.240, 45A.275 (State Treasurer pays first portion of a judgment awarding contract damages against the Commonwealth, including any "department" thereof). Second, as to statutory language, the KDA is enumerated as a department of the state under KRS 12.020, and its Commissioner is part of the executive branch of the state government under the Kentucky Constitution. KRS 12.020; Ky. Const. § 91; *see also* KRS 246.040 (Commissioner of Agriculture is the head of the KDA); KRS 61.105 (Commissioner of Agriculture is a "state constitutional officer" and "all major management personnel" of the Commissioner are "[e]xecutive branch

immune from nonconsensual suit in federal court, and its immunity also extends to official-capacity claims against its personnel—Quarles, Shell, and Hamilton—unless *Ex parte Young* applies. *Graham*, 473 U.S. at 169. Steadman's response to the KDA Defendants again does not address the immunity issues. (Pl.'s Resp. KDA Defs.' Mot. Dismiss). As such, all claims against KDA, and claims for money damages against Quarles, Shell, and Hamilton in their official capacities, are dismissed.

**d. Injunctive Relief — The *Ex parte Young* Exception**

"Under the *Ex parte Young* exception [to Eleventh Amendment immunity], a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . , regardless of whether compliance might have an ancillary effect on the state treasury." *Cooper*, 527 F.3d at 507 (citations omitted). Stated differently, *Ex parte Young* allows plaintiffs "to sue state officers—regardless of Eleventh Amendment sovereign immunity—to enjoin future actions on behalf of the state if those actions would violate the federal constitution." *Satkowiak*, 771 F. Supp. 3d at 945 (citing *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022)). "The exception rests on the theory that, at least for purposes of prospective relief, a state official who violates federal law is 'stripped of his official or representative character.'" *Mich. Corr. Org. v. Mich. Dept. of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011)).

---

official[s]"); *Salt Lick Bancorp*, 187 F. App'x at 442-43 (finding the Kentucky Department of Financial Institutions to be "clearly an arm of the state" by looking to KRS Chapter 12). Third, as to leadership selection, the Commissioner of Agriculture is an officer for the state at large, chosen by the voters of the state at the same time as the Governor. Ky. Const. § 91. The Commissioner chooses most of the members of the State Board of Agriculture, which in turn advises the Commissioner. KRS 246.120, 246.160. Finally, the KDA's functions too are traditionally those of state, not local, government. *See* KRS 246.020.

"To determine whether a suit falls within the [*Ex parte* ]*Young* doctrine, a court ordinarily need only conduct a straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) (second alteration in original) (internal quotation marks omitted) (citation omitted). The "ongoing violation" element of *Ex parte Young* overlaps with the "injury in fact" requirement of Article III standing. *Satkowiak*, 771 F. Supp. 3d at 946 (citing *Russell*, 784 F.3d at 1047). "To allege an 'ongoing violation of federal law' sufficient to invoke the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, a plaintiff must allege a sufficiently 'imminent and particularized' threat that the state-official defendants will enforce the challenged state policy or statute against [the plaintiff] in the future." *Id.* at 946 (citing *Russell*, 784 F.3d at 1047).

To begin with, Steadman does not explicitly state in the Amended Complaint whether she is suing the Individual Defendants in their individual or official capacity, which can itself be fatal for application of *Ex parte Young*. The Sixth Circuit has held that "[o]ne prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official acted in her official capacity." *Morgan v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 63 F.4th 510, 517 (6th Cir. 2023) (emphasis added) (citations omitted). For that reason, "simply leaving the capacity of the state actor unsaid in the complaint, to be guessed by the court and defendant[]" will not suffice to invoke the limited *Ex parte Young* exception to Eleventh Amendment immunity. *Id.*

Even construing the complaint indulgently in favor of a *pro se* plaintiff, and treating the request as against the Individual Defendants in their official capacities, Steadman does not satisfy the *Ex parte Young* exception. The second component of the "straightforward inquiry" is met, because the specific injunctive relief Steadman requests is properly characterized as prospective:

"orders to prevent further unlawful actions against Plaintiff's business" and "relief preventing further unlawful targeting and ensuring equal treatment under the law." (Am. Compl. 8, 12); *Enbridge Energy, LP*, 135 F.4th at 473. Steadman does not, however, plausibly allege an ongoing violation of federal law.

First, while Steadman refers repeatedly in her submissions to alleged "continuing *injury*" that she and her business experience from the June 2020 seizure, this cannot be confused with the "ongoing *violation*" of law justifying prospective injunctive relief under *Ex parte Young*. (*See, e.g.*, Pl.'s Resp. KSP's Mot. Dismiss 2; Pl.'s Resp. Walker's Mot. Dismiss 4). *Ex parte Young* does not permit injunctive relief to remedy purely past violations. *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) ("[P]laintiffs plead their case as one for injunctive relief. Their complaint is, however, based entirely upon past acts and not *continuing conduct* that, if stopped, would provide a remedy to them, and it therefore does not come under the doctrine of *Ex Parte Young*." (emphasis added) (citations omitted)); *Grace v. Kentucky*, No. 5:20-CV-36-TBR, 2021 WL 707872, at *3 (W.D. Ky. Feb. 23, 2021) (finding *Ex Parte Young* inapplicable, where "Plaintiff has not asked the Court for injunctive relief that is *prospective*: Plaintiff is asking the Court to right a perceived wrong based on an isolated incident in the past rather than to right a perceived wrong based on an ongoing violation of federal law."); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 416-17 (6th Cir. 2019) ("The *Ex parte Young* exception does not, however, extend to any retroactive relief." (quoting *Cooper*, 527 F.3d at 507-08)). Were Steadman's requested injunctive relief understood as seeking to remedy only lingering effects of the past seizure, it would no longer be properly characterized as "prospective," and *Ex parte Young* would not apply.

Second, the Amended Complaint does not plausibly allege an "imminent and particularized" threat of targeting by Defendants in the future. The factual allegations against the

named Defendants all relate to a single incident over six years ago, on June 11, 2020. To the extent that further action—or, more accurately, inaction—is attributed to any Defendant after that date, it is limited to the Attorney General's and the KDA Defendants' alleged failures to "correct" the previous seizure after the fact. (Am. Compl. 7). While there are additional factual allegations of events occurring in 2025, these are not attributed to Defendants in this action. Even if the June 2020 seizure had been illegal, Steadman does not plausibly allege a threatened imminent repeat of such a seizure. The fact that a previous seizure occurred is not sufficient to obtain injunctive relief against what amounts to the mere possibility of a future seizure. *Kanuszewski*, 927 F.3d at 406 ("[T]he fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that' it will occur in the future, as is required for injunctive relief." (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 106 (1983)); *Satkowiak*, 771 F. Supp. 3d at 946.

A sister court recently reached the same conclusion on strikingly similar facts to the case at bar: a request for injunctive relief stemming from the alleged seizure of legal hemp, treated as illegal marijuana. *Smith v. Dunn*, No. 3:25-CV-50-TAV-DCP, 2026 WL 2687009, at *8 (E.D. Tenn. Sep. 14, 2026). The plaintiff in *Smith*, a "licensed hemp grower," alleged that he sold and distributed hemp in compliance with all state and federal laws. *Id.* at *2. He was transporting a large quantity of hemp, when he was stopped by Tennessee law enforcement officers, who, believing his hemp to be marijuana, seized his shipment. *Id.* The hemp was never returned, and criminal charges were also initially brought, though later dismissed. *Id.* The plaintiff sought, *inter alia*, injunctive relief against law enforcement and prosecutors, "to ensure that the [d]efendants [would] not continue to violate his constitutional rights in the future." *Id.* at *8. The court analyzed the *Ex parte Young* exception in relation to the requested injunctive relief, and found it did not apply. The plaintiff had "[a]t best . . . alleged a mere possibility of future injury in the form of

seizure and destruction of hemp product[,]" and there was no "suggestion that plaintiff's hemp product will again be seized by [the] defendants . . . ." As a result, the court found that "[u]ltimately, [the] plaintiff ha[d] not made any showing that he [was] 'realistically threatened by a repetition' of his alleged experiences with [the] defendants." *Id.* (citing *Lyons*, 461 U.S. at 109).

Steadman's allegations here lead to the same result. Alone, seizure of her hemp more than five years before filing this suit does not plausibly allege that Steadman is "realistically threatened by a repetition" of the same. *Lyons*, 461 U.S. at 109; *Smith*, 2026 WL 2687009, at *8; *see also Satkowiak*, 771 F. Supp. 3d at 948. Her more recent allegations are unconnected to Defendants in this case. Because Steadman has not plausibly alleged an "ongoing violation" of federal law that could be remedied by the prospective injunctive relief she seeks, the *Ex parte Young* exception to sovereign immunity does not apply. Accordingly, Steadman's claim for injunctive relief against the Individual Defendants is barred by the Eleventh Amendment, and will be dismissed.[13]

### 3. ***Failure to State a Claim***

As a result of the foregoing jurisdictional and immunity analysis, all claims against the KSP and the KDA have been dismissed, as well as all claims against the Individual Defendants in their official capacities, and any claims for injunctive relief against them. Remaining are only the claims for money damages against the Individual Defendants in their individual capacities, and the claims for money damages and injunctive relief against the BCSO. All Defendants have challenged these claims under Fed. R. Civ. P. 12(b)(6), including based on the statute of limitations.

[13] For the same reasons, were the claim for injunctive relief construed as against the Individual Defendants in their *individual* capacities, it would be dismissed for lack of Article III standing. *See Satkowiak*, 771 F. Supp. 3d at 947; *Russell*, 784 F.3d at 1047 ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the ongoing violation] element of *Ex parte Young*."). Although not briefed by the parties, the Court can raise the issue of Article III standing *sua sponte*. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012).

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted); 42 U.S.C. § 1983. Two elements are required to state a claim under Section 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege (1) deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991) (citations omitted). "Absent either element, a [S]ection 1983 claim will not lie." *Id.*

The statute of limitations in Section 1983 actions is the limitations period for personal injury cases in the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). In Kentucky, Section 1983 actions are subject to the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *Mathis v. Mayo*, No. 3:20-CV-P783-RGJ, 2021 WL 1428475, at *1 (W.D. Ky. Apr. 15, 2021).

Although the statute of limitations turns on state law, the question of when a Section 1983 claim accrues to trigger the running of the limitations period is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[I]t is well settled that [Section] 1983 claims accrue 'when the plaintiff has a complete and present cause of action'; that is, 'when the plaintiff can file suit and obtain relief.'" *Codrington v. Dolak*, 142 F.4th 884, 891 (6th Cir. 2025) (quoting *Wallace*, 549 U.S. at 388). Courts look to "what event should have alerted the typical lay person to protect his or her rights." *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) (citation omitted). Further, "[c]ourts universally recognize that the discovery rule [for accrual] begins once a plaintiff learns of *an* injury from the defendant's conduct—even if the plaintiff does not discover

the '*full extent* of the injury' until later." *Reguli v. Russ*, 109 F.4th 874, 883 (6th Cir. 2024) (citing *Wallace*, 549 U.S. at 391) (additional citations omitted).

Steadman's Amended Complaint seeks to bring four counts under Section 1983: "Count I - Fourth Amendment: Unlawful seizure without probable cause[;] Count II - Fourteenth Amendment: Deprivation of property without due process[;] Count III - Equal Protection[:] Selective enforcement compared to similarly situated operators[;] Count IV - Deprivation of Rights Under Color of Law." (Am. Compl. 10-11). Count IV is not an identifiable separate cause of action, since all Section 1983 claims involve deprivation of rights under color of law. *Christy*, 932 F.2d at 504. Count IV is therefore dismissed as duplicative of Counts I-III. The remaining claims would only be timely if they accrued less than one year before April 23, 2026, when this action was filed. (Complaint 1, DN 1).

**a. Count I – Fourth Amendment Unlawful Seizure**

In Count I, Steadman brings a claim under the "Fourth Amendment: Unlawful seizure without probable cause." (Am. Comp. 11). This claim, based on the seizure of Steadman's hemp, accrued on the date of that seizure—June 11, 2020. *See Roth v. Metcalfe Cnty. Sheriff Off.*, No. 1:24-CV-P76-JHM, 2024 WL 4895833, at *3 (W.D. Ky. Nov. 26, 2024); *Geary v. Brantley*, No. 4:12CV-P33-M, 2012 WL 3598286, at *4 (W.D. Ky. Aug. 17, 2012); *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008); (Am. Compl. 7). The one-year limitations period therefore ran from that date, and expired years before this action was brought.

Steadman's opposition briefs do not respond to Defendants' arguments regarding the statute of limitations and accrual issues on the face of the Amended Complaint, but refer to her desire to provide, via further amendment, "facts relevant to accrual, equitable tolling, delayed discovery of material facts, and continuing injuries." (Pl.'s Resp. Walker's Mot. Dismiss 4). As

with the Motion for Extension of time, this request is denied as both an inadequate attempt to amend—without attaching a copy of the proposed amendments—and as futile. *See Kuyat*, 747 F.3d at 444; *Wershe*, 112 F.4th at 372. Count I's Fourth Amendment claim will accordingly be dismissed.

**b. Count II – Fourteenth Amendment Due Process**

Count II claims a violation of the "Fourteenth Amendment: Deprivation of property without due process." (Am. Compl. 11). The due process clause "has both a substantive and a procedural component." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (citations omitted). Whether construed as making a procedural or substantive due process claim, Count II will also be dismissed as to all Defendants.

A procedural due process claim has two elements: "First, there must be a deprivation by state action of a protected interest in life, liberty, or property. Second, there must be inadequate state process." *Bozzo v. Nanasy*, 159 F.4th 1111, 1116-17 (6th Cir. 2025) (internal quotation marks omitted) (internal citations omitted). Such a claim is considered "complete," and therefore accrues for statute of limitations purposes, "once the 'deprivation' and the State's failure to 'provide due process' have both occurred." *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

To the extent that Steadman claims inadequate *pre*-deprivation process by any Defendant, such a claim would have accrued on June 11, 2020, because both the injury and the deficient process would necessarily have occurred by that time. Steadman alleges that her hemp was tested and in compliance before it was seized, so she was alert to the injury arising from its seizure well

more than one year before this suit was filed. (Am. Compl. 7). Such a claim based on deficiency of pre-deprivation procedural due process would accordingly be time-barred.

To the extent that the claim is based on deficient *post*-deprivation process, only the KDA personnel or the Attorney General could be the subject, since they are the only Defendants who are the target of any factual allegations after the seizure itself.[14] Those factual allegations, however, are extremely sparse. Steadman alleges that "representatives of the Kentucky Department of Agriculture" participated in "execut[ing] a warrant" at her farm, that "[t]he Kentucky Department of Agriculture had prior knowledge of Plaintiff's lawful hemp operation and testing but failed to prevent *or correct* the unlawful seizure[,]" and that at some later point, Steadman "notified state officials, including the Office of the Attorney General, but *no corrective action* was taken." (Am. Compl. 7 (emphasis added)).

These bare assertions of non-intervention, devoid of any factual enhancement, are not sufficient to state a plausible claim for a violation of procedural due process by the Attorney General, Quarles, Shell, or Hamilton. *See Bozzo*, 159 F.4th at 1120 (finding that procedural due process claim for deficient post-deprivation process failed to state a claim under Fed. R. Civ. P. 12(b)(6), where the plaintiff's allegations did not identify any "aspects of the post-deprivation process with which he [took] issue," and his general attacks on the decisionmaker did not "plausibly show that the arbitrator was biased against [him], let alone some other procedural defect."); *see also Peach v. Hagerman*, 675 F. Supp. 3d 755, 775 (W.D. Ky. 2023) (noting that on a motion to dismiss a procedural due process claim, the "ultimate question is whether [the plaintiff]

---

[14] The BCSO's and Walker's alleged involvement with Steadman is limited entirely to obtaining and executing a search warrant and seizing her hemp crop: "Defendant Detective Robert Walker participated in obtaining and executing the warrant. The Kentucky State Police and Barren County Sheriff['s] Office carried out the seizure." (Am. Compl. 7).

alleged sufficient facts to support an inference that this deprivation occurred without adequate procedural safeguards").[15]

The result is the same if Count II were construed as making a substantive due process claim. Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (alteration in original) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). It "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)). Substantive due process "also protects the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.* (citations omitted). Conscience-shocking conduct "violates the decencies of civilized conduct" and includes "actions so brutal and offensive that [they do] not comport with

[15] Additionally, Steadman's failure to attribute specific actions to Quarles, Shell, or Hamilton individually—rather than to "representatives of the KDA" as a group—is also fatal to her claims. *See Williams v. Martin*, No. 1:22-CV-P134-GNS, 2023 WL 425130, at *2 (W.D. Ky. Jan. 26, 2023) ("Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints."); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of plaintiff's claims for failure to state a claim, where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). As to the Attorney General, were the claim against him understood as a failure to investigate or supervise other government officials, it also would not state a plausible claim. There is no *respondeat superior* liability under Section 1983; a plaintiff must identify how "each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013) (affirming dismissal of Section 1983 claims against state attorney general in his individual capacity, because the plaintiff's "general allegations of [the defendant's] failure to supervise and investigate are insufficient to state a claim under [Section 1983] standards.").

traditional ideas of fair play and decency.'" *Id.* at 589-90 (alteration in original) (internal quotation marks omitted) (citation omitted).

Any substantive due process claim premised on the seizure itself or acts predating it would be time-barred. *See Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 788-89 (6th Cir. 2016) (finding that the plaintiff's substantive due process claim accrued when the act that allegedly "'shocked the conscience' and lacked any rational government interest" took place); *see also Reguli*, 109 F.4th at 883 (noting that the discovery rule for accrual of Section 1983 claims triggers the statute of limitations "once a plaintiff learns of *an* injury from the defendant's conduct—even if the plaintiff does not discover the '*full extent* of the injury' until later." (citations omitted)).

To the extent that the claim would be based on anything *after* the seizure, the bare assertion of non-intervention after a seizure of property based on a search warrant does not state a plausible substantive due process claim. *See CDDM Corp. v. City of Lansing*, No. 1:25-CV-431, 2025 WL 2802385, at *4 (W.D. Mich. Oct. 2, 2025) (dismissing substantive due process claim for failure to state a claim, where plaintiff company's claim that defendant city council members had an inadequate basis to revoke its licenses and acted out of animus towards it, did not suggest that the defendants had committed an egregious act or violated basic societal norms); *Courser v. Mich. House of Reps.*, 404 F. Supp. 3d 1125, 1147 (W.D. Mich. 2019) (dismissing substantive due process claim where most of the factual allegations related to persons other than the defendants, and the allegations against the defendants themselves "offer[ed] nothing more than conclusions that [did] not rise to the level of a substantive due process violation").

Steadman in her response to the KDA Defendants' motion emphasizes the alleged presence of "KDA personnel" during the seizure, which does not impact the statute of limitations problem.

(Pl.'s Resp. KDA Defs.' Mot. Dismiss 2). Her response also emphasizes the need for discovery to determine exactly which KDA personnel were involved, and in what way. (Pl.'s Resp. KDA Defs.' Mot. Dismiss 2). As the Supreme Court has stated, however, the federal pleading standard governing a motion to dismiss "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79. As to the Attorney General, Steadman focuses her response on the Attorney General's being "on notice" of the alleged unlawful seizure after it occurred, and argues that her "communications" with him are "relevant to her efforts to seek relief . . . ." (Pl.'s Resp. AG's Mot. Dismiss 1-2). This does not address the Amended Complaint's failure to adequately plead a plausible due process claim. (Pl.'s Resp. KDA Defs.' Mot. Dismiss 3; Pl.'s Resp. AG's Mot. Dismiss 2). Accordingly, Count II's due process claim will be dismissed.

**c. Count III – Fourteenth Amendment Equal Protection**

Count III claims a violation of "Equal Protection[:] Selective enforcement compared to similarly situated operators[,]" and meets the same result. (Am. Compl. 11). A typical Fourteenth Amendment selective-enforcement claim has three elements: "(1) a state actor singling out and prosecuting a person belonging to an identifiable group, even though the state actor has not done so in similar situations to people not belonging to that group; (2) the state actor initiating the prosecution with a discriminatory purpose; and (3) the prosecution having a discriminatory effect on the group to which the individual belongs." *Codrington*, 142 F.4th at 891 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)); *see also Cunningham v. Sisk*, 136 F. App'x 771, 774 n.5 (6th Cir. 2005) (noting that the equal protection analysis for a selective prosecution and selective enforcement claim is the same).

Selective-enforcement claims are generally held to accrue when the challenged enforcement action takes place, because at that point there is a complete and present cause of action. *Codrington*, 142 F.4th at 891-92 (finding that equal protection selective-enforcement claim based on a criminal prosecution arising out of an allegedly discriminatory stop, accrued once the criminal charges were issued); *Childress v. City of Cincinnati*, 765 F. Supp. 3d 662, 681-84 (S.D. Ohio 2025) ("[A] selective-enforcement claim typically accrues 'at the time that the wrongful act resulting in damages occurs.'" (citation omitted)), *clarified on denial of reconsideration*, 823 F. Supp. 3d 787 (S.D. Ohio 2026), *reconsideration denied*, No. 1:24-CV-214, 2026 WL 2797813 (S.D. Ohio Aug. 7, 2026).

Steadman's selective-enforcement claim is not based on a criminal prosecution—she specifically alleges that "[n]o criminal charges followed[]" the seizure of her hemp. (Am. Compl. 11). The allegedly-selective enforcement action she identifies is that "[o]ther similarly situated cannabis and hemp-related businesses in Kentucky were *allowed to continue operating* and were publicly recognized, while Plaintiff was not[,]" and that "[o]ther operators were *allowed to continue operating* and were publicly listed . . . while Plaintiff was excluded." (Am. Compl. 7, 11 (emphasis added)).

The only viable interpretation of these allegations against Defendants is that the "enforcement action" challenged by Steadman is their obtaining and executing a search warrant to seize her hemp—and not doing so to others.[16] This is fatal, however, to her selective enforcement

[16] With regard to the Attorney General in particular, Steadman specifically concedes in her response that he is not alleged to be personally involved in the seizure. (Pl.'s Resp. AG's Mot. Dismiss 1). This leaves no basis for a selective-enforcement claim against him. As to the alleged non-"recognition" or non-"listing" of her business, Steadman alleges no facts to identify a Defendant specifically responsible for those decisions. *See Rieves v. Town of Smyrna*, 959 F.3d 678, 700 (6th Cir. 2020) ("The complaint fails to allege a selective enforcement claim against [the

claim. If the claim is not based on the search and seizure—the only enforcement action taken by any Defendant—then it fails to state a claim on which relief can be granted. If, on the other hand, it *is* based on the search and seizure, then it accrued at the time of the seizure and is time-barred. Steadman also fails to plead facts supporting her membership in an identifiable group, or that the enforcement action against her had a discriminatory purpose. *Codrington*, 142 F.4th at 891; *see also Moore v. Stucki*, No. 5:24-CV-142-BJB, 2025 WL 2779154, at *5 (W.D. Ky. Sep. 26, 2025) (noting that even in a "'class-of-one' selective-enforcement claim[,]" a plaintiff must still allege facts supporting an inference that the defendant distinguished him or her from another based on "some 'bad reason' or that [the defendant] 'had no rational basis' to distinguish" between them (citing *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004)).

None of Steadman's responses address any of these issues with the selective enforcement claim, emphasizing only her desire for discovery and her alternative request for the opportunity to amend. Accordingly, Count III's selective enforcement claim, too, will be dismissed.

#### d. Barren County and the *Monell* Policy or Custom Requirement

The BCSO also correctly identifies a further reason the Amended Complaint fails to state a claim against it: as a county sheriff's department, the BCSO is not a "person" capable of being sued under Section 1983. (BCSO's Mot. Dismiss 3-4); *see Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991).[17] Indeed, Steadman's claims against the BCSO are properly construed as against Barren County. *See Matthews v. LMPD*, No. 3:19-CV-P581-RGJ, 2019 WL 5549209, at *2 (W.D. Ky. Oct. 25, 2019); *Jones*, 35 F.3d at

---

county sheriff] because it does not show [he] was responsible for the decision to selectively prosecute the plaintiffs.").

[17] Though the claims against them have already been dismissed due to the Eleventh Amendment, the KSP and the KDA are also not "persons" suable under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

1049 (holding that since the police department is not an entity which may be sued, the county is the proper party).

When a Section 1983 claim is made against a county or municipality, there are two distinct issues: "(1) whether [the] plaintiff's harm was caused by a constitutional violation; and (2) if so, whether [the municipality or county] is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). A municipality or county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal or county policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under [Section] 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citation omitted). The *Monell* "policy or custom" requirement applies to claims for injunctive relief as well as claims for money damages. *L.A. Cnty. v. Humphries*, 562 U.S. 29, 32 (2010).

Steadman has not alleged facts supporting that any of the alleged violations of her constitutional rights were due to a policy or custom of Barren County. Her response to the BCSO's motion does not address this issue. (Pl.'s Resp. BCSO's Mot. Dismiss). All claims against Barren County will therefore also be dismissed on this additional basis.

**e. Qualified Immunity**

Walker, Quarles, Shell, and Hamilton also assert that they are entitled to qualified immunity. (Walker's Mot. Dismiss 7-9; KDA Defs.' Mot. Dismiss 8-9). Because all claims are herein dismissed for jurisdictional, statute of limitations, or pleading reasons, it is unnecessary to determine these Defendants' entitlement to qualified immunity.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Extension of Time (DN 16) is **GRANTED IN PART** and **DENIED IN PART**.

2. Plaintiff's Motion for Leave to Supplement the Record with Exhibits (DN 15) is **DENIED**.

3. Defendants' Motions to Dismiss (DN 6, 7, 8, 10, 11) are **GRANTED**, and Plaintiff's claims are **DISMISSED**.

4. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
November 16, 2026

cc: counsel of record
Plaintiff, *pro se*